UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN DANIEL HAWKINS, JR.,    )
    )
       Petitioner,    )
    )
     v.    )    No. 4:13-CV-0313-JMB
    )
JANET SCHNEIDER,[1]    )
    )
       Respondent.    )

## MEMORANDUM AND ORDER

John Daniel Hawkins, Jr. (hereinafter "Hawkins") brings this *pro se* action, seeking a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). The Court concludes that the matter may be resolved on the existing record. The Court further concludes that the Petition should be denied and that no certificate of appealability should be issued.

## INTRODUCTION AND PROCEDURAL HISTORY

### I.    Factual Background

#### A.    Initial Guilty Plea and Sentence[2]

Hawkins' circumstances are, in some senses, procedurally unique and require a fair amount of explanation to understand the context of Hawkins' petition. Hawkins' current

---

[1] Although Hawkins' petition originally named Douglas Prudden as the respondent, it appears that Hawkins was "conditionally released / paroled" to the St. Louis Community Release Center ("SLCRC") in January 2016. Janet Schneider is the Superintendent of the SLCRC and should be substituted as the respondent. See Rule 2(a), Rules Governing Section 2254 Cases.
[2] The factual background is taken primarily from the Missouri Court of Appeals decision affirming the denial of Hawkins' State Post-Conviction Motion, and the legal file (Resp. Exh. 1).

incarceration is the result of the interplay of three different felony convictions in the City of St. Louis. As a result, Hawkins has filed three separate petitions under § 2254. Table I broadly summarizes the procedural background of Hawkins' three federal habeas petitions.

| TABLE I | | | |
|---|---|---|---|
| **Charge** | **State Cause No.** | **Disposition** | **E.D. Missouri Cause No.** |
| Drug Offenses | 0722-CR02300<br><br>Plea & Sentence together with 0722-CR07453 | Probation Revoked and 12-year sentence ordered executed on 4/30/2010<br><br>**Status: Currently In Custody** | 4:13 CV 313 JMB |
| Burglary / Stealing | 0722-CR07453<br><br>Plea & Sentence together with 0722-CR02300 | Probation Revoked and 12-year sentence ordered executed on 4/30/2010<br><br>**Status: Currently In Custody** | 4:13 CV 2325 JAR |
| Property Damage | 0922-CR00705 | Conviction after trial Sentenced to time served on 5/14/10<br><br>**Status: Not In Custody** | 4:13 CV 2506 JMB |

Although the present Memorandum and Order focuses on only one of Hawkins' petitions, the undersigned believes it would be useful to discuss, at least in part, the circumstances associated with Hawkins' convictions.

In 2007, Hawkins was charged with felony and misdemeanor drug offenses for crack cocaine and marijuana possession. (Cause number 0722-CR02300) That same year, Hawkins was also charged with burglary and stealing over $500. (Cause number 0722-CR07453) On June 2, 2008, Hawkins appeared for a plea hearing in both cases, which was conducted before the same Circuit Judge. Hawkins entered a traditional guilty plea to the misdemeanor drug charge, but chose to enter Alford[3] guilty pleas to the felony drug charge and the burglary-related charges. (Resp. Exh. 1 at 96)

---

[3] See North Carolina v. Alford, 400 U.S. 25 (1970). In Alford, the Supreme Court explained that "[a]n individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." Id. at 37.

At the time of his pleas, the court made a detailed record regarding the factual basis for the pleas, as well as Hawkins' knowledge of his rights and the voluntary nature of his pleas. The record included, among other facts, that the State made plea offers to Hawkins which he rejected. (Id. at 84-85) Those plea offers, had they been accepted, would have subjected Hawkins to a lengthy term of imprisonment.

The trial court carefully advised Hawkins of his options regarding a trial or a plea, and ensured that Hawkins understood the maximum range of punishment he faced upon pleading guilty. (Id. at 86-87) Hawkins indicated that he did not want to plead guilty pursuant to the State's plea offers and that he hoped for a better sentence than the State was offering. The trial court advised Hawkins that there was no guarantee as to what sentence he might receive, other than it would be within the allowable range of punishment. (Id. at 88) The trial court also explained Hawkins' trial rights to him, including the power to subpoena witnesses to testify in his defense. (Id. at 90-92)

Before accepting Hawkins' guilty pleas, the court conducted a detailed inquiry into Hawkins' satisfaction with his attorney's performance. Hawkins represented to the court that he was satisfied with his attorney and had no complaints. Hawkins specifically advised the court that his attorney contacted all of the witnesses Hawkins wanted contacted. Hawkins' attorney advised that he subpoenaed the witness Hawkins had identified. (Id. at 92-94) Before allowing Hawkins to formally enter any pleas, the trial court gave him the opportunity to take a break and reconsider his decision with his attorney. (Id. at 95) After this detailed inquiry, and giving Hawkins additional time to consult with his attorney, the court permitted Hawkins to enter his Alford pleas to the felony charges in the two pending cases – 0722-CR02300 and 0722-

---

The Court further explained that "[t]he standard [for accepting guilty pleas] was and remains whether the plea represents a voluntary and intelligent choice among alternative courses of action open to the defendant." Id. at 31.

CR07453. Hawkins also entered a traditional guilty plea to the misdemeanor marijuana charge. (Id. at 96-99) The record indicates that, after accepting Hawkins' pleas, the court released Hawkins from jail pending sentencing. (Id. at 108)

On August 22, 2008, the court sentenced Hawkins on the drug and burglary convictions. The court found that, based on his prior convictions, Hawkins qualified as a prior and persistent offender under Missouri law. The State recommended a sentence of ten years of imprisonment, while Hawkins requested a period of probation. The court sentenced Hawkins to a term of twelve years of imprisonment, but suspended the execution of that sentence and ordered Hawkins to serve five years of supervised probation on the felony convictions, and two years of unsupervised probation on the misdemeanor marijuana conviction. (Id. at 112-13) After announcing Hawkins' sentence, the court asked Hawkins if he had anything to say and offered to give Hawkins additional time to consult with his lawyer and come back. Hawkins declined the offer. (Id. at 114) Neither party objected to the sentence, as imposed on August 22, 2008.

Hawkins did not appeal his convictions and sentences in the drug possession and burglary cases (cause numbers 0722-CR02300 and 0722-CR07453, respectively).

**B.** **Probation Revocation**

Hawkins did not complete his term of probation successfully. In 2009, while he was on probation for the aforementioned drug and burglary convictions, Hawkins was charged with a new crime of property damage in the first degree (City of St. Louis cause number 0922-CR00705). (Id. at 124) Hawkins was tried, and on April 15, 2010, a jury convicted him on the property damage charge. As a result of the property damage conviction, on April 23, 2010, the court held a probation revocation hearing regarding Hawkins' 2008 drug and burglary convictions. (Id. at 121-29) Hawkins waived his right to a revocation hearing. Prior to

4

accepting Hawkins' waiver, however, the court took steps to ensure that Hawkins had sufficient time to discuss the revocation matter with his attorney, and recessed the matter so that Hawkins could further confer with his attorney. (Id. at 125-29) After conferring with his attorney, Hawkins affirmed his waiver of a revocation hearing. The court accepted Hawkins' waiver of a hearing, but before deciding on a sentence, the court adjourned the matter for a week to determine whether Hawkins qualified for any alternative programs.

On April 30, 2010, the court revoked Hawkins' probation and ordered that his sentences be executed in cause numbers 0722-CR02300 (drug offenses) and 0722-CR07453 (burglary offense), with credit for time served while Hawkins awaited disposition in the property damage case. The record indicates that the court intended for Hawkins to participate in a long-term substance abuse treatment program. (Id. at 129, 143)

At the conclusion of the April 30, 2010 revocation hearing, the trial court advised Hawkins of his rights and deadlines regarding post-conviction relief, pursuant to Mo. R. Crim. P. 24.035. (Id. at 145) Specifically, the trial court explained how Hawkins could challenge his convictions in cause numbers 0722-CR02300 and 0722-CR07453, including the applicable deadlines and forms needed to initiate the post-conviction review process. (Id. at 145-147)

The trial court again inquired as to Hawkins' satisfaction with his attorney. This time, however, Hawkins' stated that he was dissatisfied with his plea attorney's performance. (Id. 152-156) According to Hawkins, his attorney in the underlying cases advised him to plead guilty and that, had he gone to trial, he would have gone "up in a blaze of smoke." (Id. at 155) Hawkins stated that he advised his attorney of all of his witnesses and his attorney checked out those witnesses. (Id. at 151-52) Hawkins also stated that he knew the decision to plead guilty was his decision. (Id. at 153)

On May 14, 2010, in the property damage case, Hawkins was sentenced to one year of imprisonment, with credit for time served. The net effect of Hawkins' three convictions and sentences is that he will not serve more than twelve years in total, as the sentences ordered executed in the drug (0722-CR02300) and burglary (0722-CR0753) cases were concurrent. Hawkins has completed his sentence in the property damage case (0922-CR00705).

## II.    State Post-Conviction Motion Under Rule 24.035

### A.    *Pro Se* and Amended Post-Conviction Motion

Hawkins did not initially challenge his conviction and suspended sentence in a direct appeal or by a post-conviction motion. After the court revoked his probation, however, Hawkins did seek to challenge the underlying convictions. On August 16, 2010, Hawkins filed a timely *pro se* post-conviction motion, pursuant to Missouri Rule 24.035. (Resp. Exh. 1 at 3) In his *pro se* motion, Hawkins raised three claims of ineffective assistance of counsel – each directed to his initial plea and sentencing counsel. Hawkins did not challenge the revocation of his probation or any claims of ineffective assistance of counsel in connection with the revocation proceedings.

Although it is not entirely clear, Hawkins' first *pro se* claim appears to assert that his trial counsel was ineffective in failing to seek suppression of evidence. (Id. at 4) Hawkins' second *pro se* claim alleges that his attorney should have objected to the twelve-year suspended sentence he received. (Id.) In his third *pro se* claim, Hawkins alleges his attorney should have called or notified his witness – Ms. Roberts. (Id.)

The motion court appointed counsel to assist Hawkins. On January 4, 2011, appointed counsel filed an amended post-conviction motion, raising a single ground of ineffective assistance of counsel. See Norville v. State, 83 S.W.3d 112, 114 (Mo. Ct. App. 2002) (amended motion supersedes *pro se* motion). In particular, Hawkins' amended motion alleged that his

guilty plea to Count I (the felony crack cocaine charge) was "involuntary, unknowing, and unintelligent" because his "plea counsel failed to prepare to call" Rose Roberts to testify that Hawkins' did not possess the crack cocaine in question. (Resp. Exh. 1 at 16-17)

The motion court denied Hawkins' amended motion without a hearing. (Id. at 35) The motion court found that the record of Hawkins' plea hearing refuted his claim of ineffective assistance of counsel. (Id. at 39) In particular, the motion court noted that Hawkins represented that he was satisfied with his counsel's performance and his counsel had interviewed Ms. Roberts to his satisfaction. The motion court further found that Hawkins was aware that he gave up his right to call Ms. Roberts as a witness by pleading guilty. (Id. at 28, 30) Finally, the record indicated that Ms. Roberts had been subpoenaed as a witness in Hawkins' case. (Id. at 30)

The motion court applied foregoing factual determinations, made on the basis of record from Hawkins' plea hearing, to the standards outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). (Resp. Exh. 1. at 32) The motion court further explained that, under Missouri law, a guilty plea waives all errors other than those affecting voluntariness or the understanding upon which the plea was based.[4] (Resp. Exh. 1 at 32; citing cases)

The motion court found similarity between Hawkins' case and Boxx v. State, 857 S.W.2d 425, 427 (Mo. App. Ct. 1993).[5] According to the motion court, the defendant in Boxx claimed that his plea counsel was "ineffective for failing to subpoena an alibi witness." (Resp. Exh. 1 at 32-33) "The Missouri Court of Appeals … held 'Defendant's claim of ineffective assistance of counsel for failure of his trial counsel to subpoena witnesses is refuted by the record. Defendant

---

[4] In Missouri, an Alford plea is treated as a voluntary plea of guilty. Bounds v. State, 556 S.W.2d 497 (Mo. Ct. App. E.D. 1977). An Alford plea will not vitiate a voluntary and intelligent waiver of defenses. Rice v. State, 585 S.W.2d 488, 494 (Mo. 1979).

[5] Abrogated in part by Hoskins v. State, 395 S.W.3d 695 (Mo. 2010) (plain error review does not apply to claims not raised in post-conviction motion).

admitted the crime under oath. Therefore, testimony of witnesses who state he did not commit the crime would be of little benefit." (Id. at 33; quoting Boxx, 857 S.W.2d at 427). The motion court further reasoned that, the record refuted Hawkins' claim because Hawkins affirmatively acknowledged that plea counsel had interviewed Ms. Roberts prior to the plea hearing, and that he was satisfied with counsel's performance. (Id.)

The motion court also found the record from the plea hearing refuted any claim that Hawkins' plea was involuntary or coerced. (Id. at 34) The motion court noted that Hawkins' responses to the questions made at the time of his plea hearing specifically indicated that: (1) his plea was voluntary; (2) he was satisfied with his attorney's assistance; (3) he understood his rights had he gone to trial; and (4) he was not coerced. (Id. at 34)

The motion court rejected Hawkins' contention that he wanted to go to trial, but his trial counsel dissuaded him by advising him his trial would "go up in a blaze of smoke."[6] (Id. at 34) First, as the motion court noted, trial counsel is not ineffective by advising a defendant of counsel's opinion on the merits of a defense – such advice does not constitute coercion, even if coupled with a strong recommendation that a defendant should plead guilty. (Id. at 34-35; citing Fingers v. State, 564 S.W.2d 91, 92 (Mo. Ct. App. E.D. 1978)) More importantly, the motion court found that the final decision to plead guilty, rather than proceed to trial, was made by Hawkins, not his attorney. (Id. at 35)

### B. Appeal of Denial of Post-Conviction Motion

Hawkins timely appealed the motion court's denial of his Rule 24.035 motion, arguing that the motion court erred in denying his Rule 24.035 motion without a hearing because he

---

[6] This claim is not before this court, but is cited to aid consideration of counsel's actions pertaining to witness Ms. Roberts.

alleged facts not refuted by the record that, if proven, would have entitled him to relief. (Resp. Exh. 4 and 5)

On March 6, 2012, the Missouri Court of Appeals affirmed the motion court's decision in a summary order accompanied by a more detailed supplemental memorandum. (Id.) Like the motion court, the Missouri Court of Appeals held that the record and files in the case conclusively refuted Hawkins' ineffective assistance of counsel claim. (Resp. Exh. 5 at 6) The Missouri Court of Appeals also explained that, to the extent Hawkins might have had a complaint regarding his attorney's alleged failure to investigate, that complaint was waived by his voluntary plea. (Id. at 6) Specifically, the appeals court rejected Hawkins' claim that he was denied effective assistance of counsel because his attorney failed to prepare and call an important defense witness. (Id. at 5) Accordingly, the Missouri Court of Appeals affirmed the denial of Hawkins' rule 24.035 motion without a hearing.

## ISSUES RAISED IN HAWKINS' § 2254 PETITION

On February 13, 2013, Hawkins mailed the instant petition under 28 U.S.C. § 2254. The petition was docketed and filed in this Court on February 19, 2013. Hawkins raises two grounds for relief. For his first ground, Hawkins contends that his Alford plea was made involuntarily, unknowingly, and unintelligently. The Court will liberally construe this first ground to state a claim of ineffective assistance of counsel because the facts argued in support of this ground speak only of counsel's alleged ineffectiveness, and not of any other possible constitutional violation regarding his State proceedings.[7] If Hawkins' first ground is construed narrowly to attack his plea without reference to counsel's alleged performance, it would be procedurally defaulted because such a claim was not raised in his State proceedings.

---

[7] Hawkins argues that his plea counsel failed to prepare and call Ms. Roberts as a witness to testify that she saw Hawkins purchase a $5.00 bag of marijuana and did not see any cocaine. (ECF No. 1 at 5)

Hawkins' second ground for relief alleges that his plea counsel was ineffective for failing to object to the twelve-year suspended execution of sentence he received on the felony drug charge.  (ECF No. 1 at 6)

## ANALYSIS

## I.     Timeliness – One-Year Limitations Period

Respondent has raised an issue regarding the timeliness of Hawkins' petition.  The present case presents intricate questions involving the significance of a suspended sentence.  As explained below, the Court concludes that Hawkins' petition is untimely.  Nonetheless, the Court will address the two grounds raised in Hawkins' petition to ensure a complete and thorough resolution of this matter.

"The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") establishes a 1-year limitation period for a state prisoner to file a federal habeas corpus petition.  That year runs from the latest of four specified dates."  Jimenez v. Quarterman, 129 S. Ct. 681, 683 (2009) (citing 28 U.S.C. § 2244(d)(1)).  Under § 2244(d)(1), the one-year limitation period runs from the latest of –

> (A) the date on which the judgment became final by the conclusion of <u>direct review</u> or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Id. (emphasis supplied).  Hawkins' case implicates only § 2244(d)(1)(A).

The concept of finality can be elusive in the habeas corpus context.  Although the procedural context of Jimenez differs significantly from Hawkins' case, the statutory analysis in

that case is instructive. In <u>Jimenez</u>, the Court explained that, "[f]inality is a concept that has been 'variously' defined; like many legal terms, its precise meaning depends on context.'" 129 S. Ct. at 685 (quoting <u>Clay v. United States</u>, 537 U.S. 522, 527 (2003)). Under § 2244(d)(1)(A), "the finality of a state-court judgment is expressly defined by statute as 'the conclusion of direct review or the expiration for seeking such review.'" <u>Id.</u> (quoting § 2244(d)(1)(A)). In <u>Gonzalez v. Thaler</u>, the Supreme Court provided further clarification by explaining that "the finality" at issue § 2244(d)(1)(A) "consists of two prongs" – "the 'conclusion of direct review' and the 'expiration of the time for seeking such review.'" 132 S. Ct. 641, 653 (2012).

Respondent argues that Hawkins' petition to this Court is untimely because it was filed more than one year after his conviction became final under Missouri law. In Missouri, "a suspended execution of sentence is an entry of judgment, because the sentence has been assessed and only the act of executing the sentence has been suspended." <u>Dear v. Moore</u>, 2009 WL 330656 at *4 (E.D. Mo. Feb. 6, 2009) (citing <u>State v. Nelson</u>, 9 S.W.3d 687, 688 (Mo. Ct. App. 1999)). <u>See</u> <u>also</u> <u>Garrett v. Dormire</u>, 2011 WL 4445839 at *4 (E.D. Mo. Sep. 26, 2011) (same); <u>State ex rel. Poucher v. Vincent</u>, 258 S.W.3d 62, 66 (Mo. 2008). Under Missouri law, a judgment "does not become final until 'thirty days after its entry if no timely authorized after-trial motion is filed.'" <u>Dear</u>, 2009 WL 330656 at *4 (quoting Mo. Sup. Ct. R. 81.05(a)(1)). After a criminal judgment is final, a party then has ten days within which to file an appropriate notice of appeal. <u>Id.</u>; <u>see also</u> Mo. Sup. Ct. R. 30.01(a), 81.04(a).[8] When these rules and principles are applied to Hawkins' case, it appears that his petition to this Court is untimely.

Hawkins entered his <u>Alford</u> plea on the felony drug charge on June 2, 2008, and the trial court entered its judgment on August 22, 2008. Hawkins signed the judgment. (Resp. Ex. 1 at

---

[8] Respondent argues that Hawkins' conviction became final when he was sentenced and does not include an additional 30 days pursuant to Mo. Sup. Ct. R. 81.05(a)(1). (ECF No. 9 at 3) This difference has no impact on the outcome to the Court's timeliness analysis.

59-62)  As such, Hawkins' judgment was final on or about September 21, 2008.  Hawkins did

not appeal his conviction or sentence.  Thus, Hawkins conviction became final on or about

October 1, 2008, and the one-year limitation period began at that time.  Hawkins filed his first

state post-conviction motion on August 10, 2010, almost two years after his initial conviction

became final.  Hawkins mailed his federal habeas corpus petition on February 13, 2013, well-

beyond the one-year limitation period.  Accordingly, Hawkins' federal habeas corpus petition is

untimely.

A conclusion that Hawkins' petition is untimely, however, is not necessarily the end of

the inquiry.  The Supreme Court has made clear that the one-year limitation period in the

AEDPA is a defense and is not jurisdictional.  Holland v. Florida, 560 U.S. 631, 645 (2010)

(citing Day v. McDonough, 547 U.S. 198, 205 (2006)).  "It does not set forth an inflexible rule

requiring dismissal whenever its clock has run."  Id. (internal quotations and citations omitted).

Rather, like other nonjurisdictional federal statutes of limitations, it is subject to considerations

of equitable tolling.  Id. at 645-46, 649.

Although Hawkins' petition is untimely, the Court will nonetheless address the merits of

Hawkins' grounds in the alternative for several reasons.  First, the State permitted Hawkins to

pursue post-conviction relief after his probation had been revoked and his twelve-year sentences

were ordered to be executed.  The record before this Court indicates that the State did not raise

any issues of timeliness in the State proceedings.  (See Resp. Ex. 3)  Therefore, an argument

could be made that Hawkins' case was not final for purposes of § 2244(d)(1)(A) because the

State permitted him to collaterally attack his underlying conviction.  Cf. Jimenez, 129 S. Ct. 685-

86 ("[W]here a state court grants a criminal defendant the right to file an out-of-time direct

appeal during state collateral review, but before the defendant has first sought federal habeas

relief, his judgment is not yet 'final' for purposes of § 2244(d)(1)(A).”); Gonzalez v. Thaler, 132 S. Ct. 641 (2012).

Second, Hawkins was never advised of his appellate or post-conviction rights when he was initially sentenced on the felony drug charge in August 2008. Accordingly, giving him every benefit of the doubt possible, there is at least a colorable claim that Hawkins is entitled to relief from the one-year limitation period under the doctrine of equitable tolling. See United States v. Hernandez, 436 F.3d 851, 858 (8th Cir. 2006) (explaining that equitable tolling might apply where government conduct lulls a petitioner into inaction through reliance).[9]

Finally, resolving Hawkins' claims on the merits is straightforward in this case. Thus, it would be in the interest of judicial economy to proceed to the merits of Hawkins' petition. See Trusell v. Bowersox, 447 F.3d 588, 590 (8th Cir. 2006). See also Macrum v. Luebbers, 509 F.3d 489, 501 (8th Cir. 2007).

## II.     Merits Analysis - Standard of Review and Analytical Framework

### A.     General

The standards and limitations of the AEDPA apply to this Court's review of the grounds raised in Hawkins' petition. This Court's review is both "limited and deferential." Lomholt v. Iowa, 327 F.3d 748, 751 (8th Cir. 2003). Under the AEDPA, a federal court may not grant relief to a state petitioner's claim unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, federal law as determined by the Supreme Court, or was an unreasonable determination of facts in light of the evidence presented in state court." Cole v.

---

[9] To be clear, any potential equitable tolling analysis requires one to assume that Hawkins was somehow lulled into inaction by the failure to advise him of his appellate rights. Even if that assumption is accepted as true, it remains unlikely that Hawkins could satisfy the diligence required to receive the benefit of equitable tolling.

In his § 2254 petition attacking the associated burglary conviction, Hawkins claims that the one-year limitations period should be tolled because his conviction was not an issue until it was ordered executed. (See Hawkins v. Prudden, 4:13 CV 2325 JAR, ECF No. 11 at 7) Although Hawkins has not raised a similar argument herein, the Court does not believe that, for the issues raised herein, there is any credible argument that the time between his sentence and revocation hearing would be equitably tolled.

Roper, 623 F.3d 1183, 1187 (8th Cir. 2010) (citing 28 U.S.C. § 2254(d)). "A state court decision may be incorrect, yet still not unreasonable …." Id. (citing (MeGehee v. Norris, 448 F.3d 1185, 1193 (8th Cir. 2009)). A federal court may grant habeas relief "only if the state court decision is both incorrect and unreasonable." Id.

"A state court decision is 'contrary to' the Supreme Court's clearly established precedent if the state court either 'arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law' or 'decides a case differently than th[e] [Supreme] Court has on a set of materially indistinguishable facts.'" Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 326, 412-13 (2000)). "A state court decision is an 'unreasonable application' of Supreme Court precedent if it 'identifies the correct governing legal principle… but unreasonably applies that principle to the facts of the prisoner's case.'" Id.

Furthermore, "'a determination of a factual issue made by a State court shall be presumed to be correct' in a federal habeas proceeding." Cole, 623 F.3d at 1187 (quoting 28 U.S.C. § 2254(e)(1)). Finally, a state court decision involves an unreasonable determination of the facts only if the presumptively correct factual findings do not enjoy support in the record. See Ryan v. Clark, 387 F.3d 785, 790 (8th Cir. 2004).

### B.    Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's performance was both constitutionally deficient and that he was thereby prejudiced. See Strickland v. Washington, 466 U.S. 668, 687 (1984). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of professional judgment." Bucklew, 436 F.3d at 1016 (citing Strickland, 466 U.S. at 689). Thus, "[u]nder Strickland, counsel's performance is

'measured against an objective standard of reasonableness,' and 'hindsight is discounted by pegging adequacy to counsel's perspective at the time investigative decisions are made, and by giving a heavy measure of deference to counsel's judgment.'" Id. (quoting Rompilla v. Beard, 545 U.S. 374, 380-81 (2005)). Under Strickland "[p]rejudice is shown by demonstrating that counsel's error's were so serious that they rendered the proceedings fundamentally unfair or the result unreliable." Id. (citing Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)). To be entitled to relief on a claim that trial counsel was ineffective, a petitioner must show both: (1) that "counsel's representation fell below an objective standard of reasonableness," and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result in the proceeding would have been different." Strickland, 466 U.S. at 687-88, 694. In order to succeed, a petitioner must prevail on both prongs of the Strickland standard. See Worthington v. Roper, 631 F.3d 487, 498 (8th Cir. 2011) ("Failure to establish either Strickland prong is fatal to an ineffective assistance claim.").

"Taken together, AEDPA and Strickland establish a 'doubly deferential standard of review.'" William v. Roper, 695 F.3d 825, 831 (8th Cir. 2012) (quoting Cullen v. Pinholster, 131 S. Ct. 1388, 1414 (2011)), cert. denied, Williams v. Steele, 134 S. Ct. 85 (2013). "Under [the] AEDPA, we must then give substantial deference to the state court's predictive judgment [regarding Strickland prejudice]. So long as the state court's decision was not 'contrary to' clearly established law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the Strickland standard is unreasonable, not merely whether it is incorrect." Id. (citing Harrington v. Richter, 131 S. Ct. 770, 785 (2011)). "This standard was meant to be difficult to meet, and 'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" Id. (quoting Harrington, 131

S. Ct. at 786)." "If the state court 'reasonably could have concluded that [the petitioner] was not prejudiced by counsel's actions,' then federal review under AEDPA is at an end." Id. at 832 (quoting Preno v. Moore, 131 S. Ct. 733, 740, 744 (2011)).

### C. Procedural Default

To avoid defaulting on a claim, a petitioner seeking habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply the controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020-21 (8th Cir. 2003) (quotations and citation omitted). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Id. at 1021. Claims that have not been fairly presented to the state courts are procedurally defaulted. Id. at 1022 (quoting Gray v. Netherland, 518 U.S. 152, 161-62 (1996)).

A reviewing court may excuse a default in limited circumstances. Claims that have been procedurally defaulted may not give rise to federal habeas relief unless the petitioner can demonstrate cause and prejudice for the default, or a fundamental miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991); Wainwright v. Sykes, 433 U.S. 72 (1977). "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). If a petitioner has not previously presented the substance of a habeas claim and has no available procedure for doing so because he has defaulted with respect to legitimate state requirements, federal courts are barred from considering such a ground for habeas relief. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc).

III.     **Analysis of Hawkins' Grounds**

As noted above, Hawkins' federal habeas petition raises two grounds of ineffective assistance of counsel.  In Ground One, Hawkins contends that his plea to the felony drug possession charge was involuntary, unknowing, and unintelligent because his plea counsel allegedly failed to prepare a fact witness named (Ms. Roberts).  (ECF No. 1 at 5)  In Ground Two, Hawkins argues that his counsel provided ineffective assistance by failing to object to the twelve-year sentence (which was suspended at the time) for his felony drug conviction.

A.     **Ground One – Failure to Prepare**

Ground One centers on Hawkins' claim that his plea counsel failed to prepare and subpoena Rose Roberts, a fact witness who would have allegedly refuted the State's evidence that Hawkins possessed crack cocaine.  Hawkins contends Ms. Roberts would have testified that, although Hawkins purchased a small amount of marijuana, "she saw no cocaine."  (ECF No. 1 at 5)  According to Hawkins, the alleged failure of his attorney to prepare Ms. Roberts rendered his plea involuntary, unknowing, and unintelligent.  The factual premise of Ground One is entirely undermined by the record.

Hawkins raised the substance of Ground One in his State post-conviction motion and on appeal from the denial of that motion.  Therefore, if Hawkins' petition had been timely filed, Ground One would be exhausted and properly before the Court.

As discussed above, the motion court concluded that, at the time of Hawkins' plea and original sentencing in the underlying drug case, Hawkins expressed no disagreement or issues with counsel's performance.  (See, e.g., Resp. Ex. 1 at 93-94)  Hawkins acknowledged that his

attorney had spoken to the witnesses Hawkins identified. Hawkins' counsel indicated that he subpoenaed the one witness Hawkins identified. (Id. at 94)

Moreover, the motion court also concluded that the record of Hawkins' plea showed that his plea was not involuntary or coerced. Rather, the record showed that Hawkins' attorney provided his opinion regarding his chances at trial, and that the decision to plead guilty was Hawkins' alone. (Id. at 33-35) Thus, the factual predicate for Hawkins' first ground cannot be sustained. See Cole, 623 F.3d at 1187 (factual determinations by a state court are presumed correct in federal habeas proceedings); 28 U.S.C. § 2254(e)(1) (petitioner has the burden or rebutting presumption by clear and convincing evidence).

In rejecting Hawkins' claim that his attorney failed to prepare Ms. Roberts, the Missouri courts applied the correct legal standards for reviewing ineffective assistance of counsel claims. (Id. at 32; applying Strickland standard) As noted above, the record refuted Hawkins' claim. Thus, there was nothing unreasonable about the State courts' application of the standards to Hawkins' case. Accordingly, this Court's review of Ground One under the AEDPA is at an end. See Williams, 695 F.3d 832. Ground One is denied.

**B.     Ground Two – Failure to Object to Twelve-Year Suspended Sentence**

Hawkins also contends that he received ineffective assistance because his counsel failed to object to his twelve-year sentence on the felony drug charge. (ECF No. 1 at 6) Hawkins did not raise this claim in his amended State post-conviction motion. Accordingly, it is procedurally defaulted, and Hawkins has not made any showing that would excuse his default.

Furthermore, Ground Two lacks merit and is refuted conclusively by the record. At the time of Hawkins' plea, and again at sentencing, the State court gave him ample opportunity to identify any deficiencies or gripes he may have had regarding counsel's performance. The court

also gave Hawkins time to consult further with his attorney after announcing the twelve-year suspended sentence.  (See, e.g., Resp. Ex. 1 at 92-95, 114-15)  Hawkins offered no complaints at all and declined the opportunity to confer with his attorney regarding the sentence imposed.  Further, Hawkins does not now dispute that, based on his prior convictions, he qualified as a prior, persistent offender.

One would be very hard pressed to conclude that counsel's performance was in any way deficient in this case.  Hawkins faced a lengthy term of imprisonment.  The State offered a ten-year plea deal which Hawkins rejected, and the State argued for a ten-year term of imprisonment at the time of sentencing.  (Resp. Ex. 1 at 104, 107)  As matters played out, Hawkins received a much better sentence than that advocated for by the State because the court suspended the execution of his sentence, rather than sending Hawkins to the penitentiary, as the State requested.  It is no surprise, therefore, that Hawkins voiced no complaints at the time of his sentencing – he received a very favorable outcome, all things considered.  Thus, it cannot be said that his attorney was constitutionally deficient in failing to object to a twelve-year suspended execution of sentence.  Rather, it was only after Hawkins squandered his probation by committing another felony that he took issue with counsel's performance.  Such hindsight analysis, however, is not permissible in the Strickland context.  See Bucklew, 436 F.3d at 1016; see also Williams v. United States, 452 F.3d 1009 (8th Cir. 2006).

Accordingly, Ground Two must be denied.  Ground Two is procedurally defaulted.  Even if Hawkins could cure his default, Ground Two would fail on the merits.  Hawkins cannot show how his plea and sentencing counsel's performance fell below any objectively reasonable standard.  More importantly, Hawkins cannot show prejudice.  Any prejudice in this case

resulted from Hawkins' failure to abide by the conditions of his probation. Ground Two is denied.

## **CONCLUSION**

This Court concludes Hawkins is not entitled to federal habeas relief on either ground presented in his § 2254 petition. Hawkins' petition was filed out-of-time and must be dismissed. Nonetheless, the Court fully considered the both grounds and found them to be without merit. Regarding Ground One, Hawkins has not satisfied his burden of showing that his state court proceedings were contrary to, or involved an unreasonable application of, clearly established federal law, or based upon an unreasonable determination of the facts presented in those proceedings. See 28 U.S.C. § 2254(d). As for Ground Two, even if it was not defaulted, it lacked merit under the deferential Strickland standard.

An evidentiary hearing is not warranted because the existing "record already contains all the facts necessary to resolve [Hawkins'] claim[s]." Johnston v. Luebbers, 288 F.3d 1048, 1058-60 (8th Cir. 2002) (explaining that habeas petitioners are entitled to evidentiary hearings only under narrow circumstances). See also 28 U.S.C. § 2254(e)(2).

Finally, Hawkins has failed to make a substantial showing of the denial of a constitutional right, which requires a demonstration "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Khaimov v. Crist, 297 F.3d 783, 785 (8th Cir. 2002) (quotation omitted). See also Miller-El v. Cockrell, 537 U.S. 322, 337 (2003). Thus, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253(c).

Accordingly,

**IT IS HEREBY ORDERED** that the Petition of John Daniel Hawkins, Jr. for habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that Hawkins' request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability will not be issued by this Court.

A separate Judgment will be issued forthwith.

/s/ ***John M. Bodenhausen***
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2016